UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**ESTEBAN DEJESUS LOWERY**                                                                                      **PLAINTIFF**

**v.**                                                                            **CIVIL ACTION NO. 1:11CV-P171-M**

**JACKIE STRODE, JAILER** *et al.*                                                                              **DEFENDANTS**

### MEMORANDUM OPINION

This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, a portion of the claims will be dismissed, and the others will continue.

### I.

Plaintiff Esteban Dejesus Lowery, a state inmate, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against the following Defendants in their individual and official capacities: Jackie Strode, Jailer of the Warren County Regional Jail (WCRJ); Kim James, Captain at WCRJ; Eddie Pendleton, Lieutenant at WCRJ; and Warren County.

Plaintiff claims that on February 25, 2011, another inmate rushed out of his cell and attacked Plaintiff. As Plaintiff was fending off the attack, Defendants James and Pendleton simultaneously fired their tasers, both striking Plaintiff, who "lost control of his body functions and fell face first towards a railing on the upper floor, hitting his nose, then hitting the back of his head on the concrete floor as he continue to fall." Defendant James instructed Plaintiff to roll over, and as Plaintiff was rolling over, Defendant James struck Plaintiff again with her taser. He was handcuffed, and the taser prongs were removed from his skin. His nose then started bleeding uncontrollably, and he was escorted to the medical department.

The nurse was unable to exam Plaintiff's nose to see if it was broken due to the rapid swelling of Plaintiff's face.  Plaintiff requested to be taken to the hospital but was refused, given ice, and returned to cell #2, where he had to wait for his nose to stop bleeding and the swelling to decrease.  Plaintiff repeatedly requested to be taken to the hospital, but Defendants Strode, James, and Pendleton refused his requests.  Plaintiff, instead, had to wait until Monday, February 28th, to put in a sick-call slip.  The nurse examined Plaintiff and submitted an order for x-rays to be performed by an outside nurse from The Medical Center of Bowling Green.  On that same date, the outside nurse took x-rays, and on the following day, Plaintiff was called to the medical office, where the outside nurse informed him that his nose was fractured at the top of the bridge and that he could suffer permanent damage if struck on the nose again.  He claims that he should have received surgery to correct the damage but that Defendants Strode, James, and Pendleton refused.  Plaintiff reports that he continues to have problems with his mucous membrane on the left side of his nostril and has pain, unexpected bleeding, and soreness making it painful to breathe normally, especially when sleeping or lying down.

As relief, Plaintiff seeks monetary and punitive damages.

## II.

Because Plaintiff is a prisoner seeking redress from a governmental entity and its officers and employees, this Court must review the instant action under § 1915A.  Under that statute, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, __ , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

### III.

**A.     Claims against Warren County and official-capacity claims against all other Defendants**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against Defendants Strode, James, and Pendleton, therefore, are actually against Warren County. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the

policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

In the instant case, Plaintiff has not alleged that Defendants acted pursuant to a county policy or custom in causing his alleged harm. Accordingly, the complaint fails to establish a basis of liability against the municipality.

The Court, therefore, will dismiss the claims against Warren County and the official-capacity claims against Defendants Strode, James, and Pendleton for failure to state a claim upon which relief may be granted.

**B.     Individual-capacity claims**

Plaintiff alleges that Defendants' actions violated the First, Fourth, Eighth, and Fourteenth Amendments. The First Amendment, which protects freedom of speech, assembly, and religion, has no application to the facts set forth in the complaint. Because Plaintiff asserts that he was a convicted state inmate at the time of the facts alleged in the complaint, neither the Fourth nor the Fourteenth Amendment applies. Rather, the Eighth Amendment is the source of protection for convicted prisoners complaining of denied or delayed medical treatment, *see Estelle v. Gamble*, 429 U.S. 97 (1976), and "[a]fter conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'" *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995) ("[A]ll post-conviction excessive force claims are to be raised 'exclusively

under the Eighth Amendment's cruel and unusual punishment clause.'") (quoting *Cornwell v. Dahlberg*, 963 F.2d 912, 915 (6th Cir. 1992)).

For these reasons, the Court will dismiss Plaintiff's individual-capacity, First, Fourth, and Fourteenth Amendment claims against Defendants for failure to state a claim upon which relief may be granted. **The Court will allow the individual-capacity, Eighth Amendment, excessive-force claims to continue against Defendants James and Pendleton and will allow the individual-capacity, Eighth Amendment, deliberate-indifference-to-serious-medical-needs claims to proceed against Defendants Strode, James, and Pendleton.**

The Court will enter a separate Scheduling Order governing the development of the continuing Eighth Amendment claims and will enter a separate Order dismissing all other claims.

Date:



cc: Plaintiff, *pro se*
 Defendants
 Warren County Attorney
4414.005